STREAPER *against* FISHER and others.

IN ERROR.

The purchaser at a sheriff's sale, of a ground rent, may maintain an action of covenant for the rent against the owner of the ground out of which it issues.

Generally, the levy on real estate will control all the subsequent proceedings. Therefore, if the levy be upon a rent charge and the *Venditioni Exponas, Alias Venditioni Exponas,* &c., command the sheriff to sell the rent charge, but he advertise the *lot* upon which it is charged, and make a deed to the purchaser, purporting to convey the *lot,* and no application be made to set aside the sale at the proper time, by those authorized to object to it, the rent charge passes to the purchaser.

The pendency of an ejectment for a lot of ground out of which a rent charge issues, brought by the executors of a testator, will not prevent a recovery in an action of covenant for the rent, by his devisees.

ON the return of a writ of error to the District Court for the city and county of *Philadelphia*, it appeared from the record, that this was an action of covenant brought by *Redwood Fisher* and others, devisees of *Miers Fisher*, deceased, who sued as assignees of *Charles Hurst*, to recover three years' arrears of ground rent, reserved in a deed dated the 9th of *March*, 1785, executed by the said *Charles Hurst* to *Charles W. Peale*, under whom the defendant below, *Richard Streaper*, derived title to the lot of ground out of which the ground rent issued.

On the trial in the District Court, the jury by agreement of the parties, found a verdict for the plaintiffs for one hundred and seventy-two dollars, and fifty-four cents, subject to the opinion of the court upon the facts specially found by the jury. In substance they were as follows:—

(Streaper *v.* Fisher and others.)

On the 9th of *March,* 1785, *Charles Hurst* conveyed to *Charles W. Peale* a lot of ground in the city of *Philadelphia,* particularly describing it, subject to the yearly rent or sum of fifty-three dollars thirty-three cents, payable annually on the 9th of *March,* for ever; and *Peale* covenanted to pay the said rent. At *July* Term, 1787, the executors of *William Brownjohn* obtained a judgment against *Charles Hurst,* on which several executions issued, and parts of the estate of *Charles Hurst* were sold. On an *Alias Fieri Facias pro residuo,* a levy was made, among other things, on No. 20, (the items levied upon having been numbered in consequence of being numerous,) "One yearly rent charge of fifty-three dollars and thirty-three cents, issuing and payable out of a lot, (describing it exactly,) in the possession of *C. W. Peale.*" Several writs of *Venditioni Exponas* issued, upon one of which the property was struck off to *Timothy Hurst;* but the sale was set aside. A *Pluries Venditioni Exponas* issued to *March* Term, 1799, commanding the sheriff to sell *inter alia,* No. 20, "One yearly rent charge," &c., describing it, as in the levy. To this writ the sheriff returned, that he had sold the *lot* No. 20, out of which the rent issued, to *Anthony Morris* and *Miers Fisher,* for five hundred dollars. On the 26th of *March,* 1799, the sheriff made a deed to the said *Anthony Morris* and *Miers Fisher,* in which he recited the *Fieri Facias,* the levy and the several writs of *Venditioni Exponas,* and then proceeded to state, that in pursuance of the writ of *Pluries Venditioni Exponas,* he had sold to *Anthony Morris* and *Miers Fisher,* a lot of ground and stable thereon, No. 20, containing twenty feet in breadth, on the west side of Third Street. He then conveyed to them the said lot, (describing it particularly,) "together with all and singular the rights, liberties, privileges, hereditaments, and appurtenances whatsoever, to the said hereby granted premises belonging, and the reversions and remainders, rents, issues, and profits thereof."

*Anthony Morris* afterwards conveyed his share to *Miers Fisher.*

On the 7th of *October,* 1808, *Charles W. Peale* sold the lot to *John Cameron,* subject to the ground rent. On the 30th of *September,* 1811, *Cameron* sold it to *William H. Smith,* subject to the ground rent; and on the 13th of *February,* 1817, *Smith* sold it to *Richard Streaper,* the defendant below, subject to the said ground rent of fifty-three dollars and thirty-three cents, payable to *Charles Hurst,* his heirs and assigns.

Two letters from *Miers Fisher* to *Charles W. Peale,* dated in 1812 and 1813, were produced, in which he stated, that the property had been advertised as a lot, &c., and not as a ground rent issuing out of a lot; and that he had purchased, supposing he was buying the lot itself, and not the rent charge. He then settled with the tenants for the rent in arrear, and received the rents from that time until his death in 1819. After his death, the defendant, who had until that period paid the rent, being induced to doubt *Fisher's* title to it, refused to make further payments. In the year 1823, the executors

(Streaper *v*. Fisher and others.)

of *Miers Fisher*, under a clause in his will empowering them to sell if necessary, brought an ejectment to recover the lot, or to enforce payment of the rent. To *November* Term, 1824, while the ejectment was pending, the plaintiffs, to whom this property was devised by *Miers Fisher*, brought this action.

Upon the facts thus found by the jury, the District Court gave judgment for the plaintiffs below; upon which the defendant's counsel excepted to their opinion, and removed the cause by writ of error to this court.

*J. R. Hopkins*, for the plaintiff in error, contended, that by virtue of the sheriff's deed of the 26th of *March*, 1799, the purchaser acquired no title, either to the ground rent or to the lot upon which it was charged. The sale was illegal and void, 1. Because there was no levy upon the property sold, and the sheriff cannot sell what he has not levied upon. 4 *Yeates*. 114. 2 *Binn*. 80, 92.

2. Because no inquisition was held, under the act of assembly, to ascertain whether the rents, issues, and profits would pay the debt in seven years. *Act of* 1705, *sect*. 2, 1 *Sm. L.* 57.

3. Because the sheriff does not appear to have had any authority to sell what he did sell. By the *Venditioni Exponas*, he was commanded to sell the rent charge; instead of which he advertised and sold the ground out of which it issued, for which alone the deed was made. It was never supposed by the purchasers that the ground rent passed by this deed. They always considered themselves as having purchased the lot. If they acquired no title to the land, either in consequence of irregularity in the proceedings or because it had been sold to *Peale*, before *Brownjohn's* judgment was obtained, it was their misfortune. Like all other purchasers at sheriff's sale, they come within the operation of the rule of *caveat emptor*. *Freedly* v. *Sheets*, 9 *Serg. & Rawle*, 156. There is nothing in the deed descriptive of the rent charge, and consequently it did not pass. If there be error in the description of the thing intended to be granted, nothing will pass. 1 *Com. Dig. Fait*. 286, *note*. In a sheriff's deed nothing passes under the general clause. 13 *Johns. Rep*. 537, 551. It is void for uncertainty. *Id*. 97. Under the general grant, therefore, of all the rights, liberties, &c., the rent did not pass. It would not, under such a description, in any deed; and still less in a sheriff's deed, under which the purchaser takes nothing, but what is fully and accurately described.

The plaintiff's claim is founded upon a covenant supposed to run with the land. An assignee is undoubtedly bound by a covenant which runs with the land; but for this purpose, there must be privity of estate between the parties. 1 *H. Bl. Rep*. 562. 3 *Salk*. 4. In this case there was no privity of estate. The plaintiff's testator was never seized of the rent. He never even claimed it until the year 1812, although the sheriff's deed bore date in 1799. If it be said that the defendant below recognized his title by paying him the rent, the answer is, that he was misled by Mr. *Fisher's* declara-

(Streaper *v.* Fisher and others.)

tion that he was the assignee of *Charles Hurst*, and that his title had been confirmed by the court.    The payments were made under a misapprehension of the facts, and therefore cannot affect him. . *Phill. Ev.* 479, 480.    Payment of rent is evidence of seizin, only where the party receiving it has a right of entry. 4 *Davis's Abt.* 29. Privity of interest, and not the payment of rent, is the true test of who is the landlord. *Coleman's Cases*, 50.

The defendants in error have an ejectment pending for the lot itself, and, therefore, cannot support this action of covenant for the rent charged upon the lot.    The parties to both these suits are the same; for although in the ejectment the executors of *Miers Fisher* are plaintiffs, they are by his will the trustees of the devisees.    A man cannot have two writs for the same cause of action at the same time. 1 *Bac. Ab.* 25.    The second must abate. *Id.* 22.    This suit, therefore, having been instituted after the ejectment, cannot be supported.

*Dwight* and *T. Sergeant*, (with whom was *Price*,) for the defendants in error.—In the decision of this case, two questions are involved. 1st. Can a purchaser at sheriff's sale, to whom a ground rent has been conveyed by the sheriff's deed, maintain an action of covenant against the assignee of the land out of which the rent issues?

2d. Was *Miers Fisher* such a purchaser; or, in other words, did he acquire a title to the ground rent in question by virtue of the levy, *Venditioni Exponas*, sale, and sheriff's deed?

1st. The deed from *Hurst* to *Peale* contains a covenant between the grantor, his heirs and assigns, and the grantee, his heirs and assigns, for the payment of the rent by the latter to the former.    A purchaser at sheriff's sale is an assignee in law, and becomes a party to the covenant.    By the law of *Pennsylvania*, such a purchaser becomes invested with all the legal rights of the defendant in the execution, discharged of all secret trusts. *Smith* v. *Painter*, 5 *Serg. & Rawle*, 223. If the debt be paid before execution, the purchaser's title is not affected by that circumstance. *Samms* v. *Alexander*, 3 *Yeates*, 268.    An assignee by act of law has the benefit of all covenants express or implied, which run with the land, though such assignee be not named; and a covenant to pay rent runs with the land. *Shep. Touch.* Ch. 7, *p.* 572, 574.    5 *Coke.* 17. *Appowel* v. *Monnoux*, *Moore's Rep.* case 241, *p.* 97. *Hurst* v. *Lithgrow*, 2 *Yeates*, 25.

2d. In determining whether *Fisher* was an assignee of the rent, his character is to be regarded, first at law, and secondly in equity.

1. At law. The first step in his title was a *Fieri Facias*, levied upon the ground rent in question.    The second, a *Venditioni Exponas* for the sale of the same ground rent. . The third, an *Alias Venditioni Exponas*, having the same object; and the fourth, a *Pluries Venditioni Exponas*, commanding the sheriff to sell the

(Streaper *v.* Fisher and others.)

rent; under which he sold the lot by the same description as was contained in the levy. That his official intention was to sell the rent charge, is deducible from the authority under which he acted. He recites the levy and all the proceedings in relation to the rent, and declares that he sold in pursuance of them; and though the deed describes the lot, yet it must be taken in connexion with the proceedings upon which it was founded, and be considered as a conveyance of the thing intended to be sold. The whole of the proceedings constitute one conveyance. But the instrument itself contains enough to pass the rent. It conveys lot No. 20, with all the rents, &c. The conveyance of the land, embraces all minor interests in it. The settled rules relative to the construction of deeds, will serve as guides to a decision of this case. A deed, and particularly a deed poll, must be construed most strongly against the grantor; and if it cannot operate in the manner intended by the parties, it will be construed so that it shall operate in some other manner. SPENCER, C. J., in *Jackson* v. *Blodget*, 16 *Johns.* 178. *Shep. Touch.* 82, 83. *Co. Litt.* 302. A deed shall be so interpreted, that it shall, if possible, take effect, *ut res magis valeat quam pereat. Co. Litt.* 183, 186. 2 *Saund.* 96, *b. note* 1. A deed is never void, if by any construction it can be made good. Thus a grant at common law, or a bargain and sale, may operate as a covenant to stand seized. A feoffment will operate in the same manner. Where the words of a deed may be applied to any intent, it shall not be void. *Shep. Touch. Ch.* 5, *sec.* 2. *Exposition of Deeds. Plowd.* 160. Another rule is, that where a man grants more than he has, all that he has shall pass. *Shep. Touch. Ch.* 3, *sec.* 2, *rule* 58. If these rules be applied to the facts of the case, the sale will be found good. Where there is enough in a deed to designate what is meant to be conveyed, the addition of circumstances, false or mistaken, will not vitiate it. *Jackson* v. *Clark*, 7 *Johns.* 217, 224. The case of *Jackson* v. *Loomis*, 18 *Johns.* 81, in which the words "Lot No. 51," were rejected as surplusage, closely resembles this, in which the mistake was, the omission to insert the words "ground rent issuing out of," the lot which was properly described.

The words of the instrument in themselves pass the rent. If A. grants all his lands and tenements in D., and has nothing there but a rent charge, that will pass. 2 *Roll. Ab.* 57. *Grant: T.* 6. A devises to B. all his lands in D. and has nothing there but tithes; the tithes pass. 1 *Roll. Ab.* 164. *Devise, N.* 4. It is settled in *Pennsylvania,* that the term "*land*" includes every secondary and derivative interest connected with it, such as a rent charge. *Shaupe* v. *Shaupe,* 12 *Serg. & Rawle,* 12. If a sheriff's deed purport to convey a fee, and the defendant had only an estate for life, that passes. 1 *Cowen's Rep.* 470. So if it purport to convey a share of a jointenant greater than he had, what he had will pass. 14 *Mass. Rep.* 404. 4 *Yeates.* 111.

2. As to equity. The levy and writs were the power under

(Streaper *v.* Fisher and others.)

which the sheriff acted. The deed was the formal execution of that power; which having been defectively performed, equity will aid it. *Madd. Ch.* 47. *Sugden on Vend.* 523. The purchasers having paid a valuable consideration, a court of equity would correct the mistake in the conveyance; for the consideration is the substance of the conveyance, and all the rest mere form. *Powel on Powers,* 161, 163, 165. The debtor has received all the benefit of the sale; has assented to the transfer of his interest; the purchase money has gone to pay his debts; he has never moved to set aside the sale, and it cannot now be disturbed. A sheriff's sale of land on a judgment against an executor *de son tort,* is void, yet those who stand by and encourage it, are bound by it. *Nass* v. *Vanswearingen,* 10 *Serg. & Rawle,* 144. So if property be not included in a levy, if the debtor represent it as included, the purchaser will hold it. *Buchanan* v. *Moore,* 13 *Serg. & Rawle,* 304, 306. If a party having title stand by and see the property sold as another's, he cannot afterwards set up his own title. *Covert* v. *Irwin,* 3 *Serg. & Rawle,* 283. *Hurst,* therefore, and all those who claim under him, are conclusively estopped to deny the plaintiffs' title. Even if the mistake could have been corrected before the acknowledgment of the sheriff's deed, it is too late now, after the lapse of 20 years, which cures all irregularities in judicial proceedings. *Thompson* v. *Skinner,* 7 *Johns. Rep.* 556.

As to the objection founded upon the pendency of the ejectment for the lot itself, it is answered by saying, that it is not between the parties to this suit. The executors of *Miers Fisher,* and not his devisees, are the plaintiffs. If, too, there be any thing in the objection, it should have been pleaded in abatement. 1 *Chitty Pl.* 443. *Percival* v. *Hicky,* 18 *Johns.* 257. Besides, it is only one of three concurrent remedies, distress, covenant, and re-entry. *Bantleon* v. *Smith,* 2 *Binn.* 146, 153. *Chipman* v. *Martin,* 13 *Johns.* 244.

*P. A. Browne,* in reply.—A stranger cannot sue on a covenant in a deed. To support an action, the plaintiff must be a party to the instrument, unless he be an assignee suing upon a covenant running with the land. But he must, in that case, be an assignee in the legal acceptation of the term. Even where a party comes in by act of law, he is not necessarily such an assignee. 2 *Bac. Ab.* 75, *Covt. E.* The rules of construction relied upon in the opposite argument do not apply to a case like this. They refer entirely to sales between parties, and do not apply to judicial sales. The reason of the rule that deeds are to be taken most strongly against the grantor, does not exist as to the deed of a sheriff. He has no interest in the property, and no motive to look into those matters which concern other grantors. Is it to be construed most strongly against the debtor? The policy of *Pennsylvania* has been to protect the debtor; hence the extension of the property, if the rents, issues, and profits, will pay in seven years; hence personal property must be taken into execution before real, and the mansion house sold last.

(Streaper *v.* Fisher and others.)

The rule that if a deed cannot operate in one way it shall in another, is likewise confined to deeds between parties. A sheriff's deed cannot operate as a release or confirmation. He can sell only in the manner prescribed by law, and his deed can operate only as a grant; because the law only gives him power to grant. The cases cited against us are not in point. In that in 18 *Johns.* 81, there was a mistake in calling the property No. 51, instead of No 50; but the description was so perfect without the number, that there could be no uncertainty about it. No one was or could be taken by surprise. The case in 14 *Mass. R.* 404, was decided on the principle, that no one could be injured by sustaining the sale. Besides, the description was full and correct, and though the deed could not operate to pass the whole estate it purported to pass, yet it was held to operate to the extent of the estate the party had.

The pendency of the ejectment is a fatal obstacle to the plaintiffs' recovery. A party cannot claim in inconsistent rights. He cannot claim both the rent and the land. It is not the case of concurrent remedies for the same thing; but of inconsistent and contradictory claims, which cannot subsist together. It was not necessary to take advantage of this objection by a plea in abatement. It may be pleaded either in bar or in abatement. 5 *Bac. Ab.* 439. *Pleas and Pleading.*

Huston, J., (after stating the facts,) delivered the opinion of the court.

Several objections taken to the plaintiffs' recovery were very properly passed over by their concluding counsel.

The statute 32 *Hen.* 8. is reported by the judges to extend to this state, and, in fact, has been always in use here. Soon after its passage, a construction was put on it which has not been varied. Collateral covenants, such as do not relate to or depend on the land demised, are not within it; but covenants, which touch or relate to the land demised, run with the land, and bind the assignee, and the assignee of an assignee, the assignee of an executor, or heir or devisee, or whoever is terretenant of the land under the demise, whether coming in by assignment or act of law; and the lessor, and all claiming under or through him, are equally bound, and equally entitled with the lessee, and those claiming under or through him. He to whom a lease for years is sold, is within it. 5 *Co.* 162, (the whole of that case.) *Shep. Touch. Ch.* 7, 176, 179. And the only difference in the liabilities of the original parties, and those coming after them, is, that covenant lies generally against the original party after his interest is parted with; assignees are generally answerable for breaches within their own time; and when the books say, no stranger can take advantage of a covenant, if by covenant is meant a covenant real respecting land, or leases, it is to be understood that whoever is privy in contract or in tenure, is not a stranger. A stranger is one who claims under another title, adverse or paramount.

(Streaper *v.* Fisher and others.)

Another objection is made, on account of the difference between the levy and the deed. This difference is as to the interest of *C. Hurst* in the lot; not as to the description of the lot, in which that interest is. The lot is well described; but the levy is on a rent charge, though the deed conveys the land itself, or purports to convey it.

What passes by a deed from the grantor to a grantee has been often discussed, and, it would seem, ought to be considered settled. Courts will not, if it can be avoided, suffer a deed to be inoperative, when fairly made, and on good and legal consideration; and, if the form used will not operate as the parties intended, it shall have effect in some other way, if possible. Thus a deed intended as a release, may take effect as a grant of a reversion; an attornment, or a surrender *et converso. Shepherd's Chap. of Exposition of Deeds,* and 2 *Saunders,* 94. Indeed, it has been very properly conceded, that if *Charles Hurst,* after selling to *Peale,* reserving this rent charge and a right of entry to enforce it, had afterwards sold a second time, all that *Hurst* could sell, viz. the rent charge and right of entry, would have passed. But it is contended, that such is not the effect of a judicial sale on execution.

A rent charge, or any other legal or equitable interest in lands, may in this state be sold on execution. 1 *Yeates,* 429. *Shaupe* v. *Shaupe,* 12 *Serg. & Rawle,* 12. Generally, the levy will control all the subsequent proceedings: it is the foundation on which all is built. There may be difficulty, where the sale is more extensive than the levy, if the objection is by the purchaser, and in proper time; for he may be affected. So there may be an objection by the defendant in the execution, if the advertisement does not conform to the levy; but, if the plaintiff and defendant in the execution, and all judgment creditors acquiesce, if the purchaser does not object, on what principle can a third person be heard at the end of thirty years, or why does he complain of an irregularity, which does not, and cannot affect him? The rent charge is due. The heirs of *Hurst* do not, and could not now claim it. But on principle, and on authority, the sale was good from the time the deed was made and accepted. Before, or, under some circumstances, shortly after, the defendant or the purchaser might have objected. After payment of the money, and acquiescence, neither could. Where the sale purports to convey the whole interest of the defendant in the execution, any and every interest he has will pass; at least, where it is not greater than described; and even if greater, and the defendant knew of the sale and did not take exception, and have his interest properly described. So in other states. 1 *Conn. Rep.* 470. 14 *Mass. Rep.* 404.

The whole interest of *Charles Hurst* passed by this sale and deed, and the plaintiffs below are in law assignees of *Charles Hurst,* and can support this suit.

There is nothing in the objection of another suit pending. It is not by the same parties; nor, so far as we see, for the same object.

Judgment affirmed.