Pronzato *v.* Guerrina, Appellant.

Argued November 19, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

re-argument refused August 1, 1960.

*Laurence H. Eldredge,* with him *Francis X. Diebold,* for appellant.

*William Brodsky,* with him *Clarence M. Freedman,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 30, 1960:

Isabella M. Guerrina (decedent) owned certain real estate located at 6902 Chew Street, Philadelphia, which, on January 17, 1953, she conveyed to Gorgas Corporation, a corporation owned solely by her son, Joseph F. Guerrina (appellant). At the time of this conveyance, decedent reserved to herself a ground rent[1] in the amount of $8,000 payable in the following manner: annual interest of $400 payable quarterly, $100 annual amortization of principal payable quarterly and the principal balance to be paid at the end of a ten year term.

On February 18, 1953, the decedent assigned in writing this ground rent[2] to appellant in his individual ca-

---

[1] A ground rent, an incorporeal hereditament, is an interest in land distinct and separate from the land out of which it issues: Bushong, Pennsylvania Land Law, Vol. 1, p. 123, and cases therein cited. In *Juvenal v. Patterson,* 10 Pa. 282, 283, it was said: "That a ground-rent is real estate, is ruled in Irwin v. The Bank of the U. S., 1 Barr, 349, Bosler v. Kuhn, 8 W. & S. 185, and in other cases". A ground rent is created when the owner of land conveys his whole estate in fee simple to another, reserving for himself a rent service; the grantor has the ground rent estate and the grantee the ownership of the land subject to payment of the ground rent: Ladner, Real Estate Conveyancing, Vol. 1, §104. See also: Fallon, Pennsylvania Law of Conveyancing, §344 et seq.

[2] A ground rent is assignable: *Streaper v. Fisher,* 1 Rawle 155; *Juvenal v. Patterson,* supra; *Cook v. Brightly,* 46 Pa. 439. Such an assignment passes legal title not only to the right of distress, the power to re-enter, etc., but to all the remedies of whatever description which the grantor had against the grantee: *Juvenal v. Patterson,* supra, p. 284; *Cobb v. Biddle,* 14 Pa. 444.

pacity. This assignment, absolute on its face, recited a nominal consideration of One ($1.00) dollar. This assignment remained, unrecorded, in the possession of Attorney Christy, who had prepared it,[3] until decedent's death on December 22, 1954.

Approximately eleven months before decedent's death—on January 13, 1954—Attorney Christy wrote a letter to Josephine Perrong, a daughter of decedent, in which letter, after referring to various steps leading up to the execution of the written assignment and offering to show her the assignment, he stated, inter alia: "Said assignment has been delivered to me in escrow under the following conditions: If at any time during the life of your mother she should personally need any of the principal or reserved ground rent, then the same shall be paid her to the extent that she may personally need it, otherwise upon her death she has instructed me to deliver the assignment to Joseph F. Guerrina".

Approximately nine months after decedent's death, the appellee,—decedent's personal representative—,instituted an equity action in Court of Common Pleas No. 5 of Philadelphia County against appellant to cancel the ground rent assignment. Appellee's theory was that, when decedent executed this assignment, she had a contemporaneous oral agreement with appellant that the ground rent would be assigned to him only upon the consideration that he, the appellant, would for the rest of decedent's natural life pay *all* medical, hospital and other expenses connected with any illness of decedent; that appellant breached this agreement in that

---

[3] Attorney Christy had been attorney for both Gorgas Corporation and the appellant. Attorney Christy's exact status when he prepared the assignment is a matter of controversy. The court below, on adequate evidence, found that Attorney Christy was then acting for decedent.

while he paid *some,* he did not pay *all* the medical, hospital, etc., expenses[4] with the result that there was a failure of consideration for the assignment. Appellant denied that there was any oral agreement between his mother and himself. He averred, under New Matter in his pleadings, that decedent voluntarily executed the assignment and delivered it to Attorney Christy on February 18, 1953 with the instructions that it was "to be held by him during her lifetime, and upon her death to deliver the same [to appellant], provided that in the event that she should personally need any of the ground rent, after exhausting her other assets, then to the extent of her personal needs she was entitled to use and have the benefit of said ground rent" and that decedent never had personal need of the ground rent.[5]

Both parties concede that decedent voluntarily executed and delivered this written ground rent assignment to Attorney Christy. Appellee alleges it was given for a consideration which failed; appellant alleges it was delivered upon a condition which occurred.

After a hearing, the chancellor directed that the assignment be cancelled upon the ground that the consideration for the assignment, i.e., appellant's undertaking to pay *all* decedent's medical, hospital, etc. bills, had failed. The court en banc affirmed the action of the chancellor and from its final decree this appeal was taken.

Basically, appellant's position is that his deceased mother made an inter vivos gift to him of this written assignment of the ground rent. To prove such a gift inter vivos it must be shown that there was an intent to make a gift and a delivery, actual or constructive,

---

[4] Appellant paid medical and other bills of the decedent in the amount of $1,012.60. The decedent paid $341.15.

[5] When decedent died she left an estate of approximately $20,000, exclusive of the ground rent.

of the subject matter of the gift so as to divest the donor of dominion and control over it. Appellant correctly urges that a requisite delivery may be made to a third person for ultimate delivery to the person sought to be benefited. In *Chambley et al. v. Rumbaugh et al.,* 333 Pa. 319, 322, 323, 5 A. 2d 171, this Court stated: "It is not necessary that delivery of a deed should be to the grantee himself, but it is sufficient if it be delivered to a third person to be given by him in turn to the grantee at some specified time, as, for example, upon the death of the grantor. . . . Nor is delivery accomplished by the mere handing of a deed to a stranger without instructions to deliver it to the grantee: [citing cases]. If, however, it appears that such instructions were given, or, if the attendant facts and circumstances indicate that the intent of the grantor was that delivery should be made by the third person to the grantee, and if the grantor parted with control, such delivery is in all respects valid, and, while the actual enjoyment of the property may be postponed, the deed, when subsequently turned over to the grantee, takes effect as of the time of the first delivery: [citing cases]." In *Rynier Estate,* 347 Pa. 471, 474, 475, 32 A. 2d 736, Mr. Justice (later Chief Justice) STERN stated: "Of course, delivery need not be made directly to the beneficiary. The instrument may be placed in the possession of a third person for delivery upon the happening of a specified contingency or event, as, for example, the death of the donor; in such cases not only is the delivery valid, but it will be held to relate back to the time of the initial delivery if that be necessary to effectuate the donor's intention: [citing cases]. Nor is it essential that the donee have knowledge of the transaction before the death of the donor, since there is a presumption that a person will accept what is for his benefit . . . and by his subsequent actual acceptance the

donee ratifies the original delivery by which the gift was made. As the chief factor in the determination of the question whether a legal delivery has been effected is the intention of the donor to transfer title to the donee, as manifested by his words and actions and by the circumstances surrounding the transaction, it is evident that each case must depend largely upon its own facts. The delivery to an agent or custodian is ineffective as a gift inter vivos if it is not accompanied with definite instructions to make delivery in turn to the donee: [citing cases]. It is likewise ineffective if the donor indicates an intention to retain title notwithstanding his parting with possession: [citing a case]. But where the purpose of the donor to make a present gift clearly appears, and explicit directions are given as to the person to whom final delivery is to be made, as well as the time when and the event or contingency upon which it is to be made, the transaction is upheld as vesting a valid title in the donee to the deed, bond, note or other instrument which is the subject of the gift".

Applying these principles to the instant situation, was there a valid delivery of this assignment? The chancellor found that when Attorney Christy prepared and received the assignment from the decedent he was then acting as her counsel. The instructions given to him by decedent were that he should, upon her death, deliver the assignment of the ground rent to appellant. Normally such a delivery, though conditional, would constitute a valid delivery and the circumstances surrounding the making of such delivery would show an intent to make a gift inter vivos to appellant. The only fact which might cast some doubt on the validity of this gift is that the decedent reserved the right to withdraw for her personal needs, if they should arise, payments under the ground rent. The fact is that the

decedent never exercised this right nor did her needs require that she exercise this right. In *Hartman's Estate (No. 2)*, 320 Pa. 331, 182 A. 232, a deed was delivered by a woman to a third person with instructions to give it upon her death to a certain named grantee if she, the grantor, did not call for it in the meantime. The grantor never recalled the deed and, after her death, it was delivered by the third person to the grantee. This Court held that delivery was valid and that the title vested as of the time of the original delivery of the deed to the third person. The fact that such a right is reserved is "important as evidence of an intention on the part of the grantor not to effect an immediate transfer of title": footnote p. 476, *Rynier Estate,* supra. An examination of the instant factual situation indicates that decedent did reserve a right which she in fact never exercised. At the same time it is most evident under the testimony that, in the absence of the exercise of any such right on her part, she did intend that, upon her death, Attorney Christy should deliver the assignment to appellant. Under such circumstances it is clear that there was a valid gift inter vivos of this instrument of assignment to appellant. The fact that the custodian of the instrument was not the appellant's agent—as the court below found—is without legal significance:[6] *Rynier Estate,* supra, p. 477; *Gish v. Brown,* 171 Pa. 479, 33 A. 60; *Blight v. Schenck,* 10 Pa. 285, 290.

Appellee takes the position that there was no *conditional* delivery by decedent to Attorney Christy, as ap-

---

[6] *Stewart's Estate*, 309 Pa. 204, 211, 163 A. 754, relied upon by the chancellor, is inapposite. As this Court therein stated: ". . . the question as to whom [the custodian] was to hold the notes for, was the real issue to be decided. We are satisfied that [the custodian] was to hold them for testator, until such time as later instructions were given in regard to their delivery, and none such were ever given".

pellant urges, but rather that the delivery was based upon a contemporaneous oral agreement between appellant and decedent concerning the payment of medical, hospital, etc. bills. The chancellor permitted the introduction of oral testimony to prove this contemporaneous oral agreement. The purpose of the introduction of this evidence was to prove a failure of consideration for the delivery, i.e., to show that the consideration contemplated was never received. For such purpose parol evidence is clearly admissible: *Early v. Huntley*, 315 Pa. 382, 383, 172 A. 2d 683; *Cridge's Estate*, 289 Pa. 331, 337, 137 A. 455; *Piper v. Queeney*, 282 Pa. 135, 142, 127 A. 474; *Peale v. Addicks*, 174 Pa. 543, 547, 34 A. 201; *Miller v. Fichthorn*, 31 Pa. 252; *Sprenger, etc. v. Litten*, 142 Pa. Superior Ct. 194, 15 A. 2d 527; *Hess v. Gower*, 139 Pa. Superior Ct. 405, 408, 11 A. 2d 787. The chancellor properly permitted the introduction of testimony to this end.

However, appellant urges that such testimony came from witnesses who were incompetent to testify by reason of the "Deadman's Act".[7] To render incompetent a witness under this statutory provision three conditions must exist: "(1) the deceased must have had an actual right or interest in the matter at issue, i.e., an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony— must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest": *Hendrickson Estate*, 388 Pa. 39, 45, 130 A. 2d 143.

Appellee's witnesses—appellee, L. E. Guerrina and A. A. Guerrina—were all legatees under decedent's will and they testified to the oral agreement, an event which, of course, occurred in decedent's lifetime. The inter-

---

[7] Act of May 23, 1887, P.L. 158, §5(e), 28 PS §322.

ests of all these witnesses were adverse since each stood to gain or lose as the direct legal operation and effect of the judgment rendered in the litigation: *Commonwealth Trust Co. v. Szabo,* 391 Pa. 272, 281, 138 A. 2d 85 and cases therein cited. The theory upon which the chancellor permitted their testimony was that appellant had elected not to stand on the integrity of the assignment and, therefore, prima facie, the decedent's interest had not passed to appellant. In this respect the chancellor erred. The validity of the assignment or its integrity was not challenged by appellant; in fact he claimed through it. His position was that the assignment had been delivered to him through the medium of a conditional delivery to a third person. Prima facie, the decedent's interest in the ground rent had passed to appellant, a party of record.

*Katz, Admr. v. Lockman,* 356 Pa. 196, 51 A. 2d 619, and *King et al. v. Lemmer,* 315 Pa. 254, 173 A. 176, are presently apposite. In *King,* supra, one Lemmer transferred money, stock and bonds from his own name to that of himself and second wife; after his death, children by his first wife tried to set aside this transfer on the ground Lemmer was mentally incompetent to make them. Two daughters, offered as witnesses to matters which occurred during Lemmer's lifetime, were held by the court below incompetent to testify. In sustaining this ruling, we stated (p. 256): "The transfer by decedent was, prima facie, a valid gift to his wife. To avoid it, the burden was on the party contesting to show, by positive proof, fraud or coercion. . . . By decedent's own act the property passed to his wife, a party on the record. The daughters, in opposing this transfer, are opposite parties on the record. . . . The transfer being prima facie valid, both right and capacity are presumed to exist. Appellants to succeed must first strike down this prima facie case. In doing so the interest of

appellants of necessity must be adverse to that of decedent." In *Katz*, supra, a father transferred U. S. savings bonds from his own name to that of himself and son with right of survivorship. After the father's death, his personal representative sought to set aside the transfer on the ground that the transfer had been brought about by the son's fraud and coercion. The chancellor permitted the decedent's children to testify as to conversations which took place prior to their father's death. It was argued that their testimony was admissible because it disclosed admissions on the part of defendant which struck down the prima facie character of the gift and, therefore, the relative positions of the personal representative and defendant with regard to the father's interest were reversed. Defendant contended that prima facie the bonds had been transferred to him by the father and, therefore, he represented of record his father's interest. This Court held that the witnesses were incompetent and reversed, in this respect, the chancellor.

Appellee's entire testimony came from witnesses whose interests were adverse and who were testifying against an act of the decedent whose interest was represented on the record by appellant, the recipient of a prima facie gift inter vivos. Such testimony was clearly incompetent. Absent such testimony, there is nothing on this record upon which appellee can prevail.

In reaching this conclusion we have given full weight to the findings of fact of the chancellor, who saw and heard the witnesses, which findings were confirmed by the court en banc. However, with respect to inferences and deductions to be drawn from such facts and with respect to the conclusions of law, we, in line with our long established policy, have seen fit to draw our own conclusions and make our own inferences from the facts so found: *Liggins Estate*, 393 Pa. 500, 509, 143 A. 2d 349; *Carnock v. Filer*, 392 Pa. 468, 472, 141

A. 2d 195; *Eways v. Reading Parking Authority,* 385 Pa. 592, 601, 124 A. 2d 92.

In view of the conclusion reached, it is unnecessary for us to consider appellant's other contentions.

Decree reversed. Each party to pay his or her own costs.

Mr. Justice Bell concurs in the result.