## Tallarico Estate.

Argued September 30, 1966. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Francis H. Patrono,* with him *Patrono and Edwards,* for appellants.

*Thomas J. Terputac,* with him *Edward V. Sciamanna,* for appellee.

OPINION BY MR. JUSTICE JONES, April 18, 1967:

Frank Tallarico and Clara Tallarico, residents of Washington County and husband and wife, had seven living children. Prior to November 5, 1956, Clara Tallarico (first wife) was the owner of certain realty located in Washington and Greene Counties, realty which had been purchased by moneys earned in a grocery business wherein both Frank Tallarico (decedent) and his first wife had been jointly engaged.

On November 5, 1956, by a warranty deed absolute on its face, the first wife conveyed to the decedent and herself as tenants by the entireties the realty in Washington and Greene Counties. This deed—properly executed, acknowledged and delivered—was duly recorded in both counties and it recited, inter alia, that the "deed [was] made without actual consideration for the purpose of creating a tenancy by the entireties in the grantees." *Simultaneously with the execution of this deed and, at the first wife's insistence,* the decedent and his first wife, on November 5, 1956, executed a lawyer-prepared written agreement which was duly acknowledged.

Under the provisions of that written agreement, the parties agreed: (1) the wife would convey to herself and decedent all the realty then titled in her own name to be held as a tenancy by the entireties; (2) each party agreed not to remarry in the event the other party died; (3) however, in the event that either decedent or his wife should remarry, it was agreed that "title to the said real estate [should] pass to and be vested in the children of [decedent] . . . and [his] Wife, their heirs and assigns, in fee simple, from and after the date of the said remarriage"; (4) the agreement could be enforced by any child or any issue of the decedent and his first wife by proceeding in the equity courts of Washington or Greene Counties for the revocation and setting aside of the deed to the extent it was inconsistent with the purposes of the written agreement. The *uncontradicted testimony* of the notary public was that, after this written agreement had been executed and acknowledged before her, she handed an executed copy of the agreement to both decedent and his wife. This agreement was not recorded until after the deaths of both decedent and his first wife.

Approximately three years subsequent to the execution of the deed and agreement, the first wife died. Ap-

proximately one year thereafter, decedent met and married in Italy one Maria Mauro (second wife).[1] Decedent returned from Italy to the United States. Six months thereafter, the second wife came to the United States and resided with the decedent for approximately one and one-half years, at which time she returned to Italy for what she described as a visit necessary for her health. While the second wife was still in Italy, decedent died on August 21, 1963.

Decedent's will was duly probated and Serafino Tallarico, a son of decedent and the executor designated in the will, renounced his rights to letters testamentary. Letters of administration c.t.a. were then issued to one Goldie Bellotti.

On October 5, 1963, decedent's children instituted an action to quiet title in the court of common pleas of Washington County against Goldie Bellotti, decedent's personal representative. The second wife filed preliminary objections to the complaint averring that exclusive jurisdiction to entertain the matter was in the orphans' court. The common pleas court held "that decedent's ownership of the real estate terminated upon his remarriage so that the property never became part of his estate", that the deed of November 5, 1956, constituted a cloud on the title of the children and that the common pleas court had jurisdiction of the subject matter. (*Tallarico v. Bellotti,* 414 Pa. 535, 537, 200 A. 2d 763 (1964)). Upon dismissal of her preliminary objections, the second wife appealed to this Court. Without determining the merits, this Court reversed the order of the court below holding that, by the grant of letters of administration c.t.a., the orphans' court had acquired jurisdiction and a subsequent controversy

---

[1] A son of decedent and his first wife accompanied his father on the trip to Italy and, while there, he met a young lady whom he married in Italy on the day preceding the marriage of decedent and the second wife.

concerning the title to the realty should be determined by the orphans' court: *Tallarico v. Bellotti,* 414 Pa. 535, 200 A. 2d 763 (1964).

Thereafter, the children petitioned the Orphans' Court of Washington County for an order determining that the realty described in the deed of November 5, 1956, was not an asset of the decedent's estate. Upon issue joined, hearings were held before the Orphans' Court of Washington County and, after such hearings, that court determined that the realty was a part of the decedent's estate and dismissed the children's petition. From that decree four of the children have appealed.

The rationale of the court below was that, since the agreement of November 5, 1956, had not been *delivered* to the children, it was ineffective as a conveyance of an interest in the realty and, further, that the children were equitably estopped to assert the invalidity of the second wife's claim to a share in the realty.

The position of the appellant-children is that, by virtue of the agreement between the decedent and his first wife, they acquired an executory interest which automatically vested title to the real estate in them at the moment decedent married the second wife on November 5, 1960. They contend that the deed and the agreement between decedent and his first wife having been made simultaneously must be treated as one transaction (see: *Greenfield's Estate,* 14 Pa. 489 (1850)) and that, when so treated, it is clear that the decedent was given a defeasible fee simple, i.e., a fee simple which would be defeated in the event of his remarriage. See: *McCall v. Umbenhauer,* 270 Pa. 351, 113 A. 423 (1921); *Hults v. Holzbach,* 233 Pa. 367, 82 A. 469 (1912); *Fidelity Trust Company v. Bobloski,* 228 Pa. 52, 76 A. 720 (1910); *Scott v. Murray,* 218 Pa. 186, 67 A. 47 (1907); *Redding v. Rice,* 171 Pa. 301, 33 A. 330 (1895); Restatement, Property, §§44, comment f and 23, comment e. Under the record facts there can

be no dispute concerning the existence of a donative intent on the part of both decedent and his first wife, an intent to give the realty to the children upon the remarriage of either party. The second wife takes the position that there was no delivery of the agreement to the children and, therefore, the title never vested in them. The children urge that the delivery of the executed agreement on November 5, 1956, to the first wife constituted a delivery to her for them.

An executed agreement "may be placed in the possession of a third person for delivery upon the happening of a specified contingency or event as, for example, the death of the donor; in such cases not only is the delivery valid, but it will be held to relate back to the time of the initial delivery if that be necessary to effectuate the doner's intention:" *Pronzato v. Guerrina,* 400 Pa. 521, 527, 163 A. 2d 297 (1960). *Rynier Estate,* 347 Pa. 471, 474, 475, 32 A. 2d 736 (1943). A major consideration in determining whether such a delivery has been made is ". . . the intention of the donor to transfer title to the donee, as manifested by his words and actions and by the circumstances surrounding the transaction.": *Pronzato,* supra, p. 528, again quoting from *Rynier,* supra. See also: *Chambley v. Rumbaugh,* 333 Pa. 319, 321, 5 A. 2d 171 (1939).

An examination of the instant deed and agreement, *executed simultaneously,* clearly and unequivocally indicates that it was the intention of both decedent and his first wife to condition the wife's conveyance of the realty to the decedent and herself as tenants by entireties upon the possible remarriage of decedent, if he survived the first wife. Such intention was made known to the children by reason of occasional conversations with some of the children concerning the contents and purpose of the agreement. That the second wife, after her marriage, became cognizant of such intention is evidenced by two occurrences: (1) the decedent had

written a letter to his second wife telling her that the "property belongs to the children"; (2) the second wife testified concerning a meeting,—which had taken place subsequent to her marriage to decedent—, between decedent, an attorney and herself whereat the attorney informed her that, before any transfer of the realty could be made to her, the children would have to sign such instrument. There can be no doubt on this record that the decedent definitely was of the opinion that his remarriage completely divested him of any title or claim of ownership to the realty.

Even if the facts as to delivery were to be considered "slight or ambiguous", the conclusion of a delivery is buttressed by the fact that the gift was one between a parent and children. In such situations ". . . 'the delivery may be proved by the declarations of the donor, just as the gift itself may be; and when the donor declares that he had given at a previous time, and that the donee had then become the owner, it is implied that delivery, and indeed every other formality necessary to create a gift, had taken place. The law always presumes knowledge of its requirements.' ": *Leitch v. Diamond National Bank,* 234 Pa. 557, 567, 83 A. 416 (1912). In the case at bar the decedent did so declare during his lifetime. Both tenants by the entireties, particularly the first wife, intended a gift of the realty to the children upon the occurrence of a remarriage and considered the delivery of the agreement to the first wife an effective delivery to the children. The effective date of such delivery relates back to the remarriage of decedent and the second wife. The donees of a gift of an executory interest are presumed to accept such gift absent any showing of an intent to the contrary, and the instant record reveals no such contrary intent. We are satisfied that, upon the remarriage of decedent, the gift of realty to the children became complete.

To establish an interest in this realty, the second wife maintains that the children are equitably estopped to claim any interest in the realty.

In *Northwestern National Bank v. Commonwealth*, 345 Pa. 192, 196, 197, 27 A. 2d 20 (1942), this Court stated: "Equitable 'estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. In this situation, the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements': [citing authorities].

"The following principles must be considered in applying the doctrine of equitable estoppel: '. . . in the absence of expressly proved fraud, there can be no estoppel based on the acts or conduct of the party sought to be estopped, where they are as consistent with honest purpose and with absence of negligence as with their opposites.' [citing an authority]. 'There can be no equitable estoppel where the complainant's act appears to be rather the result of his own will or judgment than the product of what defendant did or represented. The act must be induced by, and be the immediate or proximate result of, the conduct or representation, which must be such as the party claiming the estoppel had a right to rely on. The representation or conduct must of itself have been sufficient to warrant the action of the party claiming the estoppel. If notwithstanding such representation or conduct he was still obliged to inquire for the existence of other facts and to rely on them also to sustain the course of action

adopted, he cannot claim that the conduct of the other party was the cause of his action and no estoppel will arise.' [citing an authority]. 'Where there is no concealment, misrepresentation, or other inequitable conduct by the other party, a party may not properly claim that an estoppel arises in his favor from his own omission or mistake.': [citing authority]. 'Estoppel cannot be predicated on errors of judgment by person asking its benefit.': [citing authorities]."

The record facts indicate clearly: (1) the children never made any representation whatsoever to the second wife designed to deceive her as to the identity of the owners of this realty; (2) none of the children, certainly prior to decedent's remarriage, ever spoke to the second wife concerning this realty; (3) the second wife admitted that she had told one of the decedent's daughters-in-law that she had wanted to marry decedent "for his pension and that she did not care about the property"; (4) the incident in the attorney's office certainly brought knowledge to the second wife that the children had at least some interest in this property. The present record negates any finding of misrepresentation on the part of the children or any reliance by the second wife on any representation by the children and the doctrine of equitable estoppel does not apply. See: *Northwestern National Bank,* supra.

What actually transpired in the case at bar is that the decedent went abroad and married for the second time. What decedent told the second wife as an inducement for the marriage we do not know, but what he did tell the second wife cannot affect the children's rights in this property. If there was any misrepresentation upon which the second wife placed reliance, it was on the part of the decedent and not on the part of his children. Under such circumstances, the children are not estopped from claiming the ownership of this realty.

290

In reaching this conclusion, we have given full weight to the findings of fact of the chancellor in the court below. However, we have made our own deductions and inferences from such facts and drawn our own conclusions of law. See: *Pronzato,* supra, p. 532; *Coffin v. Old Orchard Development Corporation,* 408 Pa. 487, 494, 186 A. 2d 906 (1962).

Decree reversed. Each party to pay own costs.