Hess, Appellant, *v.* Gower.

Argued December 14, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Francis Johns Gafford,* with him *William H. Schneller* and *Calvin F. Smith,* of *Smith & Paff,* for appellant.

*R. C. Mauch,* of *Mauch & Goodman,* for appellee.

OPINION BY CUNNINGHAM, J., March 18, 1940:

Plaintiff, the payee of a sealed negotiable promissory note in the amount of $567, brought an action of assumpsit against defendant, an indorser thereon. A jury trial resulted in a verdict for defendant. Plaintiff's motions for judgment n. o. v. or a new trial were dismissed by the court below, and he now appeals from the judgment entered on the verdict.

The promissory note in suit was dated February 24, 1930, payable nine months thereafter to the order of E. R. Hess at the First National Bank of Bath, Pa. It was signed by Mabel Stewart and Samuel Kohler, as makers. On the reverse side, the signatures of plaintiff and defendant were indorsed in the following order:

"E. R. Hess
Edwin R. Hess .
Herbert M. Gower
Edwin R. Hess"

The note contained on its face, in addition to a warrant of attorney for confession of judgment if not paid at maturity, the following provision:

"It is agreed by any person, firm or corporation who writes his, her or its name on the face or back of this note, whether they are makers, indorsers, sureties or

guarantors, or not, that they or any of them shall be regarded as principals as between them or any of them and the holder thereof, and we hereby waive notice of demand, nonpayment, dishonor and of protest."

The origin and history of the note are not in dispute, except as to the time and circumstances under which the indorsements were made thereon. On February 24, 1930, the date of the note, plaintiff sold to Charles Stewart, who is not a party to this action or the note upon which it was brought, two horses and a cow. In consideration of the sale plaintiff accepted the note executed by Stewart's wife, Mabel Stewart, and her father, Samuel Kohler, as joint and several makers. On March 27, 1930, the note was discounted at the First National Bank of Bath by plaintiff, who received the proceeds. Upon its maturity, the makers failed to pay it, and upon the bank's demand, plaintiff paid the amount due, taking the note back. Thereafter, plaintiff instituted this suit against defendant for the full amount of the note.

The evidence is in sharp conflict as to the order in which the indorsements were placed on the back of the note and as to the circumstances surrounding its indorsement and discounting. Over the objection of plaintiff's counsel, defendant testified that he indorsed the note at plaintiff's request, in order to enable plaintiff to discount it at the bank, upon the oral understanding that plaintiff would not hold him liable in the event it was not paid by the makers. The material part of his testimony reads: "Q. When Hess brought the note to you, you saw it the first time, whose names were on it? A. Mabel Stewart, Samuel Kohler, E. R. Hess, Edwin R. Hess, and then he asked me, in the first place he came in and talked, asked if I wanted to do a favor for him and I asked him what kind of a favor and he said, 'Sign this note for Charles Stewart' and I said 'No, sir.' I said 'I'll chase you home the same as I did Charlie Stewart.' I told him they were him [here?]

and I didn't sign it and I don't want to put my name on, I don't want to pay any note, I'm paying now a note and he hung around for an hour, we done all our work and we went in for supper and he went in along and he asked me again, talked to me about the sale, about the horses and the cow and said something and I told him to sell his horses, and he said, 'Now Charlie wants a horse, he has to have the horses, you just sign the note so that I can get the money at the bank, sign it for a favor' and then my housekeeper she started having an argument with Hess, she was having an argument and he said, 'If Charlie and Kohler don't pay this note I will never collect it from you.' "

It was further testified on behalf of defendant, by Mabel Stewart, that when the note was delivered to plaintiff, defendant's name was not on it.

The assistant cashier of the bank testified in effect that when plaintiff presented the note for discount the only indorsement thereon was that of the defendant, and that in immediate connection with the discounting of the note the plaintiff indorsed his name both as "Edwin R. Hess" and "E. R. Hess" above the signature of defendant and as "Edwin R. Hess" underneath the same. Under the issues here involved the conflict in the testimony as to the order in which the indorsements were made is immaterial.

Unless the above quoted unusual provision upon the face of the note was intended to, and has, abrogated, as respects this case, well established principles of law, and given the accommodated party additional, and hitherto unrecognized, rights against the party who accommodated him, this appeal is without merit. One of the principles to which we refer is that a note indorsed for the accommodation of a party in order to assist that party in raising money upon it cannot be enforced against the accommodating party by the party accommodated: *Peale v. Addicks,* 174 Pa. 543, 34 A. 203; *Loucks v. Lightner,* 11 Pa. Superior Ct. 499; *Clothier v.*

*Webster F. S. Co.,* 21 Pa. Superior Ct. 386; and *Lacka-wanna Tr. Co. v. Carlucci,* 264 Pa. 226, 107 A. 693: See also *Rhodes v. Terheyden et al.,* 272 Pa. 397, 116 A. 364. The admissibility of the testimony above quoted is clear under *Breneman v. Furniss,* 90 Pa. 186; and *Hill v. Ely,* 5 S. & R. 363.

These principles are not seriously questioned by plaintiff, but his theory of defendant's liability is that defendant became a maker when he indorsed the note on its reverse side, by virtue of the above quoted provision on its face to the effect that any persons writing their names on the face or back of the note "shall be regarded as principals as between them or any of them and the holder thereof"; and that as a maker, defendant cannot set up by parol evidence the fact that he indorsed the note for the accommodation of plaintiff. In other words, defendant, by assuming the liability of a maker under the express provision of the note, became obligated to any holder for value, and since plaintiff occupies the status of a holder for value, by reason of having paid the bank after the default of the original makers, defendant cannot avoid liability by setting up that he is an accommodation party.

Plaintiff relies upon some general language in *Chambers v. McLean,* 24 Pa. Superior Ct. 567, and *Delaware County Trust, etc., Co. v. Haser,* 199 Pa. 17, 48 A. 694. As in every case, the general remarks in the opinions in those cases must be read in connection with the facts of each. When they are carefully analyzed we think they do not warrant the construction placed upon them by counsel for plaintiff. The Chambers case was disposed of upon the pleadings, the question at issue being the sufficiency of McLean's affidavit of defense. It was a case in which there were two makers of the note. One of them set up in his affidavit merely that he had signed the note at the request of the payee, had received no consideration from her, and therefore could not be held liable to her. In holding such aver-

ments insufficient to prevent judgment, HENDERSON, J., speaking for this court, distinctly pointed out that the affidavit did not allege that no consideration had passed from the plaintiff to the other maker, nor that the defendant had not also signed the note at the request of the other maker. Another distinguishing, and important, feature of the Chambers case is that it is specifically stated in the opinion that the affidavit did not include an averment that the defendant had "signed it (the note) solely at the request of the plaintiff in order that she might negotiate the note to third parties."

In the Haser case it clearly appears from the opinion that the payee of the note, the plaintiff trust company, was not the accommodated party. An unincorporated singing society had applied to the trust company for a loan to assist it in the erection of a building. The trust company agreed to make the loan only upon condition that it be secured by a note signed by ten members of the society. Such a note was given and the proceeds paid out by the trust company to the contractors for the building. The accommodated party in that case was the singing society.

Many courts take the view that, as between the immediate parties to a negotiable instrument, an accommodation maker is entitled, in a suit against him by the accommodated party, to defend on the ground that he received no consideration: See *Marling v. Jones,* 119 N. W. 931, 933 (Wis.); *State Sav. Bank of Woden v. Markworth,* 212 N. W. 729 (Iowa); *Stubbins Hotel Co. v. Beissbarth et al.,* 174 N. W. 217, (N. D.); *Green v. McCord,* 85 So. 750 (Ala); and Wigmore on Evidence 2d Ed., Vol. 5, Sec. 2444.

The controlling question in each case of this character seems to be the ascertainment of the accommodated party—a question usually for the jury and so treated here. This case might be ended at this point but we do not want to be understood as agreeing with plaintiff's construction of the above quoted provision as

creating certain new rights in an accommodated party as against the person accommodating him.

The court below, in dismissing plaintiff's motions for a new trial and judgment n. o. v., based its decision principally on the ground that the note on its face did not indicate without ambiguity the relationship asserted by plaintiff as between him and defendant. It construed their relationship to still be that of payee-indorser and indorser, and not that of payee and co-maker. There is force in such construction. As the court below pointed out, the draftsman of the note apparently was merely seeking to relieve the holder from the duties of presentment and giving notice of dishonor and not to change the legal status of an indorser into that of a maker for all purposes.

The cases cited by plaintiff from other jurisdictions, involving negotiable instruments with somewhat similar provisions, are interesting but not helpful.

If the provision in question is to be given a literal interpretation, as plaintiff urges, then we agree with the court below that plaintiff. would be in no better position than defendant.

He also would then be a maker and "regarded as" a "principal." It would follow that his payment to, and acquisition of the note from, the bank after its maturity, discharged the instrument, under Sec. 119, (5) of the Uniform Negotiable Instruments Act, (Act of May 16, 1901, P. L. 194, ch. 1, Art. VIII, §119, 56 PS §271), which provides: "A negotiable instrument is discharged: ...... (5) When the principal debtor becomes the holder of the instrument, at or after maturity, in his own right."

Having discharged the note, plaintiff's only right would be one of contribution against his co-makers, including defendant. Clearly, the present suit is not one for contribution, since plaintiff bases his right of action upon the note and seeks to recover its entire face value.

Under the evidence upon this record relative to the

parol agreement contribution could not be successfully enforced by the plaintiff against the defendant: "The presumption that two or more promisors of a note are equally responsible for its ultimate payment, so that if one pays the whole he shall have contribution, may be rebutted by showing that one signed for the accommodation and as surety for the other." 6 R. C. L. 1052; and see *Fayette Title & Tr. Co. v. Nelson et al.,* 114 Pa. Superior Ct. 402, 174 A. 599.

From what has been said, we think it clear that defendant was entitled to introduce parol evidence of an agreement whereby plaintiff promised not to hold him responsible. The jury by its verdict found that such an agreement was entered into. None of the assignments of error can be sustained.

Judgment affirmed.