## Shaefer's Estate

*Paul A. Koontz*, for accountant.
*Robert Madore*, for exceptants.

WRIGHT, P. J., July 19, 1946.—The First National Bank of Claysburg presented two judgments against decedent's estate in approximate amount of $1,600. These judgments are based on notes signed as follows: "F. E. Shaefer, W. C. Shaefer, Mrs. May Shaefer, Edwin E. Shaefer". The printed portion of the notes contains the following language:

"The consideration for this note is for money loaned upon the credit of the separate estate of the debtor

married woman, for the improvement of the separate estate of said married woman, for which she was at the time of incurring this indebtedness authorized to contract, under the terms of the Act of Assembly in such cases made and provided. And it is further represented that said married woman is not in any sense acting as surety, guarantor, or endorser for another in this transaction."

F. E. Shaefer and W. C. Shaefer (hereinafter called Fred and Wallace) are sons of Edwin E. Shaefer. Mrs. May Shaefer was his wife, and predeceased her husband. Decedent left to survive him five children, including Fred and Wallace. After the death of Edwin E. Shaefer, a judgment creditor of Fred and Wallace attached the shares of his debtors in the estate. The balance for distribution after payment of the judgments is approximately $900. It is the contention of counsel for the attaching creditor that Fred and Wallace are each entitled to one fifth of this balance.

Over objection, the auditor admitted oral testimony which shows conclusively that the debts represented by the bank judgments were debts of Fred and Wallace and that the father signed the notes upon which said judgments are based merely as surety for his two sons. In view of this situation the auditor then ruled that, since Fred and Wallace were indebted to the estate in amounts greater than their distributive shares, the balance for distribution should be awarded to the other three children.

It is argued that the auditor erred in admitting evidence to show the true situation between the makers of the notes. Counsel contends that the language of the notes conclusively establishes that Mrs. May Shaefer was the principal debtor and the admission of oral testimony to the contrary contradicts the terms of the notes, violating the rule that oral testimony is

inadmissible to vary the terms of a written contract in the absence of fraud, accident, or mistake, citing Gianni v. R. Russell & Co., Inc., 281 Pa. 320, Bryant v. Bryant et al., 295 Pa. 146, and Germantown Trust Co. v. Emhardt, 321 Pa. 561.

We are clearly of the opinion that this rule should not be applied in the present situation. The notes in question do not embody transactions between the obligors, but only between them and the obligee. In Hull v. Weaver, 48 Pa. Superior Ct. 290, oral testimony was admitted to show that as between obligors one was surety only. That case involved a suit by the obligee on an agreement, it being shown that the obligee knew of the surety relationship between the obligors. In First National Bank and Trust Co. v. Stolar et al., 130 Pa. Superior Ct. 480, a like conclusion was reached in a suit upon a note. In that case the creditor also had notice of the surety relationship. It was held that oral testimony was admissible even though the note provided that it was to be held as collateral security for debts of the makers to the payee. Similarly, in Hess v. Gower, 139 Pa. Superior Ct. 405, oral testimony was admitted to show that as between the payee and endorser of a note the payee was the party accommodated by the endorser, despite a provision in the note that any persons signing on the face or back should be regarded as principals. See also Commonwealth v. Willstein, 146 Pa. Superior Ct. 357, 361. It is true that our case differs from those cited in that the obligee was not shown to have had knowledge of the true relationship. We do not feel, however, that this fact is material in the present controversy since the obligee is not involved.

Since it was conclusively established that the notes in question were liabilities of Fred and Wallace, they became indebted to their father's estate when the

father's estate was compelled to pay. Where an heir is indebted to a decedent who dies intestate, equal distribution of the estate can only be effected by applying the heir's share to the payment of the indebtedness. The rights of the attaching creditor of the heir are dependent upon the heir's rights, and if the heir's share is insufficient to discharge his indebtedness, his creditors take nothing in the distribution: Dickinson's Estate, 148 Pa. 142.

On the day of argument we entered an immediate order dismissing the exceptions of the attaching creditor and confirming the auditor's report absolutely. Now, July 19, 1946, we are supplementing our formal decree by filing this opinion.