CLAYTON H. SHROUT AND IOLA S. SHROUT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shrout v. Commissioner
Docket No. 743-71
United States Tax Court
T.C. Memo 1973-89; 1973 Tax Ct. Memo LEXIS 197; 32 T.C.M. (CCH) 398; T.C.M. (RIA) 73089; April 17, 1973, Filed Clayton Shrout and Seb Caporale, for the petitioners. Leonard A. Hammes, for the respondent. STERRETT
STERRETT, Judge: The Commissioner determined a deficiency in the petitioners' Federal income tax for the calendar year 1968 in the amount of $4,411.11 and an addition to tax pursuant to section 6651(a), Internal Revenue Code *198 of 1954, [1] in the amount of $1,102.77. In respondent's amended answer to the petition herein, the deficiency and addition to tax were increased $304.51 and $76.14, respectively. The sole issue for our determination as raised in the amended answer, is whether the petitioners are entitled to a bad debt deduction as guarantors of a noncorporate obligation pursuant to section 166(f) for the calendar year 1968. 2 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. The petitioners, Clayton H. Shrout and Iola S. Shrout, are husband and wife residing at the time of the filing of their petition herein at Ralston, Nebraska. On March 4, 1970 the petitioners filed their joint Federal income tax return for the calendar year 1968 with the district director of internal revenue at Kansas City, Missouri. The petitioners, during all relevant periods, used the cash method of accounting. Iola is a party to this proceeding solely by virtue *199 of having joined in the filing of a joint income tax return and we will hereinafter refer to Clayton H. Shrout as petitioner.
Petitioner is a practicing attorney in the State of Nebraska and was admitted to the practice of law in 1939. Over a period of many years, the petitioner represented Joseph Crawford (hereinafter Crawford) and earned approximately $5,000 per year in legal fees from him. During 1964, petitioner represented Crawford in connection with the purchase of stock in Col-Pac, Inc., (hereinafter Col-Pac) an Illinois corporation which was parent to Colonial & Pacific Frigidways, Inc., a Delaware corporation, and Colonial & Pacific Frigidways, Inc., an Iowa corporation. 3 Crawford purchased 102 shares of stock in Col-Pac from Philip R. Riley for a total consideration of $150,000. The funds used to purchase the Col-Pac stock were obtained from City National Bank of Council Bluffs, Iowa. City National Bank of Council Bluffs later changed its name to First National Bank of Council Bluffs. (It will hereinafter be referred to as the "Bank".) In addition to the 102 shares of Col-Pac stock owned by Philip R. Riley, there were 50 outstanding shares owned by Orville *200 Grimes (hereinafter Grimes), an employee of Col-Pac. In order to get Grimes off the Col-Pac payroll, Crawford entered into an agreement with Grimes as follows: NOW THEREFORE IT IS AGREED BY AND BETWEEN THE PARTIES
HERETO AS FOLLOWS: 1. Crawford does by these presents purchase from Grimes 50 shares of stock, represented by stock certificate number two (2) in COL-PAC, INC. an Illinois Corporation. 2. Crawford agrees to pay, and Grimes agrees to accept, the sum of THIRTY FIVE THOUSAND AND NO HUNDREDTHS ($35,000.00) DOLLARS, plus a 1962 Ninety-eight Oldsmobile automobile, on the following basis: (a) $5,000.00 this date, receipt of which is hereby acknowledged by Grimes; (b) $10,000.00 in ninety (90) days from this date; (c) $20,000 six (6) months from this date; (d) Title to said 1962 Ninety-eight Oldsmobile is transferred-this date, receipt of same is hereby acknowledged by Grimes. After Crawford had paid Grimes $5,000 and turned over a 1962 Oldsmobile in partial performance of this agreement, Grimes 4 agreed to sell his 50 shares of Col-Pac stock for one further payment of $21,000. Crawford attempted to borrow $21,000 from the Bank, but was refused because *201 he was heavily in debt at the time. Petitioner, at the behest of Crawford, borrowed $21,000 from the Bank on April 13, 1964. The Bank specifically loaned petitioner the $21,000 and not Crawford. The note which the petitioner executed states in pertinent part: $21,000.00 COUNCIL BLUFFS, IOWA APR 13 1964 One Hundred Eighty Days after date, for value received, I, we, or either of us, as principal, promise to pay to the order of THE CITY NATIONAL BANK OF COUNCIL BLUFFS at its office in Council Bluffs, Iowa, the sum of Twenty One Thousand DOLLARS with interest, payable semi-annually at 6 per cent per annum after date to maturity. Failure to pay interest when due shall at the option of the holder hereof render the whole amount of this note due and payable without notice. Any of the principal or interest remaining unpaid after maturity, shall become as principal and bear interest at the rate of seven [sic] per cent per annum, payable semi-annually. I, we, or either of us, hereby pledge to and deposit with said Bank as collateral security 50 shs Col-Pac, Inc. (Delaware) * * *, we or either of us, promise to furnish on demand of said Bank, satisfactory additional collateral *202 should the value of the above listed collateral depreciate: * * *. No. 41413 Due /s/ Clayton H. Shrout P.O. 1004 CNB Bldg Omaha At petitioner's request, Crawford placed his signature on the back of this note. On April 11, 1964, petitioner wrote 5 a check to Grimes in the amount of $21,000 and subsequently delivered the check to Grimes. The 50 shares of Col-Pac stock were transferred to the petitioner and carried in his name. Both petitioner and Crawford considered Crawford to be the actual owner of the stock purchased from Grimes. Immediately after the purchase of the Col-Pac stock, petitioner sent Crawford the following letter: April 13, 1964 Joseph Robert Crawford 2910 South 7th Street Council Bluffs, Iowa
Dear Bob: This letter is given you for your personal records. You are advised that I have purchased in my name 50 shares of Col-Pac, Inc. from Orville Grimes for the sum of $21,000.00 (this is in addition to the $5,000.00 already paid him by you.) This letter will further advise that the sum of $21,000.00 was loaned to me by the City National Bank of Council Bluffs, Iowa, but that you are responsible for the repayment of the loan. This letter will *203 also advise that though the said stock is in my name, it is your property. This letter will also advise that I have hypothecated this stock to the City National Bank of Council Bluffs, Iowa as collateral for the loan. Yours very truly CLAYTON H. SHROUT CHS:jn The 50 shares of stock were pledged as collateral for the loan. The stock has never been returned by the Bank to 6 the petitioner or Crawford. The record does not disclose the final disposition of these particular shares of Col-pac. Crawford's ownership in Col-Pac was sold eleven months later, primarily at the insistence of the Bank. Crawford never made any payments on petitioner's loan from the Bank. Crawford filed a petition in bankruptcy with the United States District Court for the district of Nebraska, at Omaha, Nebraska, on January 21, 1966. On Schedule A-4, which was entitled "Liabilities on Notes or Bills Discounted Which Ought to be Paid by the Drawers, Makers, Acceptors, or Indorsers", Crawford listed among others the following: Holder
Nature of Liability
Amount
First National Bank of Council Bluffs, Iowa
Note signed with Clayton Shrout
$21,000
On June 20, 1966, the *204 court approved a trustees' report holding that Crawford's estate had no assets, and granted him a discharge. Petitioner's original note of April 13, 1964, secured by the 50 shares of Col-Pac, was due in 180 days. Petitioner subsequently executed three other notes in favor of the Bank on November 23, 1964, July 13, 1965, and January 10, 1966 in the amount of $21,000 as a replacement for the preceding note. On March 13, 1967, petitioner borrowed an additional amount of $9,000 from the Bank and executed a note in the amount of $30,000. 7 On April 17, 1968 petitioner borrowed an additional $9,378 and executed a replacement note of $37,000. [2]
The note executed on April 17, 1968 in the face amount of $37,000 assigned as collateral four of petitioner's accounts receivables. The note also contained a provision promising additional collateral on demand of the Bank in the event the collateral depreciated. On November 4, 1968 the balance of the loan due the bank was $31,200. At or about that time the Bank became concerned *205 about security for the loan. The Bank therefore requested petitioner to grant it a mortgage on his home, which petitioner agreed to do. On November 18, 1968 petitioner executed a mortgage note in the amount of $20,000 in favor of the Bank, which was secured by a mortgage on petitioner's residence. Both the mortgage note and the mortgage were due and payable on November 18, 1969. The mortgage note partially replaced petitioner's amount owing on his note of April 17, 1968, leaving $11,200 due. Petitioner's mortgage note was marked paid on February 6, 1970, although the record does not indicate whether cash was used or merely another note. Petitioner has continued to 8 borrow from the Bank and has had fluctuating amounts due up to the present time. OPINION The issue to be decided is whether the petitioner, upon execution of a $20,000 mortgage note, is entitled to a deduction under the provisions of section 166(f) as the guarantor of a noncorporate obligation. Section 166(f) states: (f) GUARANTOR OF CERTAIN NONCORPORATE OBLIGATIONS. - A payment by the taxpayer (other than a corporation) in discharge of part or all of his obligation as a guarantor, endorser, or *206 indemnitor of a noncorporate obligation the proceeds of which were used in the trade or business of the borrower shall be treated as a debt becoming worthless within such taxable year for purposes of this section (except that subsection (d) shall not apply), but only if the obligation of the borrower to the person to whom such payment was made was worthless (without regard to such guaranty, endorsement, or indemnity) at the time of such payment. It is apparent that, at the outset, in order to qualify under section 166(f), payment must be made as a guarantor, endorser, or indemnitor. Petitioner, at the request of Crawford, a valuable client, borrowed $21,000 from a Bank. The note he executed stated that, "One Hundred Eighty Days after date, for value received, I, we, or either of us, as principal, promise to pay to the order of The City National Bank of Council Bluffs, at its office in Council Bluffs, Iowa, the sum of Twenty One Thousand--Dollars with interest * * *. Petitioner's signature was the only 9 one appearing on the face of this note. Crawford signed his signature on the reverse side of the note. An official of the Bank indicated it had loaned the money solely *207 to the petitioner. The petitioner used the proceeds of this loan to purchase the outstanding stock of Col-Pac not already owned by Crawford. Though purchased in petitioner's name and used as collateral for the note, both petitioner and Crawford considered Crawford to be the owner of this stock. We are constrained in light of all the facts to conclude that the petitioner was primarily liable on the note of April 13, 1964, and cannot be considered to be a guarantor within the meaning of section 166(f). [3]
The express language of the note, together with petitioner's signature in the lower right-hand corner, indicates to us that he alone was the maker of the note. Crawford's signature could be considered nothing more than an endorsement creating secondary liability. Cf. Iowa Code Ann. §554.3402 (1967). Payment made on one's own obligation is not deductible as a bad debt. Dreyfus v. Commissioner, 140 F. 2d 922 (1944), affirming a Memorandum Opinion of this Court; Estate of Ernest Schwehm, 17 T.C. 1435 (1952). *208 10 In the interest of completeness we also feel that petitioner has not demonstrated to us that he has paid this particular debt. During the calendar year 1968, petitioner executed a mortgage note in the amount of $20,000 in favor of the Bank, and used his home as collateral for this note. The Supreme Court has long held that execution of a note by a cash basis taxpayer does not constitute payment until the note is actually paid. Helvering v. Price, 309 U. S. 409 (1940); Eckert v. Burnet, 283 U. S. 140 (1931); see also Donald M. Perry, 49 T.C. 508 (1968). Petitioner does not argue that he was transferring his home in satisfaction of the indebtedness. We do not doubt that Crawford was indebted to the petitioner in some way, perhaps falling within the purview of section 166(a). [4] However on the facts before us, we 11 may only conclude that the petitioner was not a guarantor of a noncorporate obligation, and further that he did not make any payments during the calendar year 1968. *209 Decision will be entered for the respondent. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
2. The petitioner paid a total of $2,378 on the note of March 13, 1967 which accounts for the note of $37,000 and loan of $9,378 on April 17, 1968. ↩
3. See Iowa Code Ann. §554.3401 (1967) and official comments following Iowa Code Ann. §554.3402↩ (1967). 4. SEC. 166. BAD DEBTS. (a) GENERAL RULE. - (1) WHOLLY WORTHLESS DEBTS. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) PARTIALLY WORTHLESS DEBTS. - When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. ↩