J-A24005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NOTE ACQUISITION, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SCOTT MORRISON, | |
| Appellant | No. 3430 EDA 2014 |

Appeal from the Order Entered November 26, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No(s): No. 2014-00817

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.              **FILED NOVEMBER 06, 2015**

Appellant, Scott Morrison, appeals from the order denying his petition to open or strike the confessed judgment on a note entered against him by Appellee, Note Acquisition, LLC.  Morrison contends that the trial court erred when it failed to treat Note Acquisition as an alter ego of its sole member, Michael Wei, who happens to be a co-debtor on the note and therefore jointly and severally liable on the note with Morrison.  We conclude that Morrison has failed to establish that Note Acquisition's involvement as a party in this matter has increased Morrison's financial exposure under the note.  We therefore affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

The relevant factual background of this case is largely undisputed. The questions before the trial court and those on appeal are primarily legal in nature, and concern the legal consequences that flow from the actions taken by Wei and Note Acquisition.

Morrison and Wei were partners in a venture to create a high-end restaurant. To this end, Morrison and Wei were members and co-managers of several business entities, including 789 Lancaster Associates, LLC ("the Borrower"). In May 2007, the Borrower borrowed $1,500,000 from Wilmington Trust of Pennsylvania ("Wilmington"). Morrison, his wife, and Wei all executed guaranties of repayment of the loan in their personal capacities. Later that year, Wilmington assigned the loan and guaranties to TriState Capital Bank ("TriState"). Morrison and Wei expressly consented to the assignments.

After the Borrower defaulted on the loan, the parties entered into a forbearance agreement in June 2009. Under the forbearance agreement, TriState agreed to refrain from pursuing its remedies for default under the note upon two conditions. First, that the Morrisons and Wei personally reduce the outstanding balance on the note to $1,000,000. After this, the Morrisons and Wei would execute a new note ("New Note") under which they, in their personal capacities, and not the Borrower, would be the primary obligors for the $1,000,000 balance. Shortly thereafter, the parties executed an allonge that modified the repayment terms, but preserved all

other aspects of the New Note. The subject restaurant failed later that same year.

In 2013, Wei formed Note Acquisition as its sole owner and managing member. Wei then transferred personal funds to Note Acquisition, which the company then used to purchase the New Note from TriState. On January 28, 2014, Note Acquisition confessed judgment on the New Note against Morrison. Morrison subsequently filed petitions to open or strike the confessed judgment. Discovery ensued, and a hearing was held on November 3, 2014. Shortly thereafter, the trial court entered an order denying the petitions. This timely appeal followed.

On appeal, Morrison raises three issues for our review.

1.    Did the trial court commit legal error in refusing to open the judgment confessed against Morrison by Note Acquisition, a single purpose entity wholly owned and controlled by Wei (Morrison's business partner and a co-maker on the note), where Note Acquisition purchased the note by paying the bank in full, thus extinguishing the debt owed on the note by both Morrison and Wei as co-makers, and leaving Wei (and his entity) with only a common law claim for equitable contribution to recover Morrison's proportional share?

2.    Did the trial court commit legal error in refusing to strike off the judgment because the parties modified the promissory note after executing the original version containing the warrant of attorney, but failed to restate the warrant of attorney in the loan modification documents?

3.    Did the trial court commit legal error in refusing to open the judgment because the assignment of the promissory note from the bank to the single purpose entity wholly owned by Morrison's co-maker Wei materially changed the nature of the Morrison's obligations as between himself and Wei, rendering the assignment invalid?

- 3 -

Appellant's Brief, at 3.

Morrison's first and third issues are challenges to the trial court's refusal to open the judgment. His second issue, in contrast, is a challenge to the trial court's refusal to strike the judgment. Striking a judgment and opening a judgment are distinct remedies, and have distinct standards of review on appeal. Regarding Morrison's second issue premised upon his petition to strike, our standard of review is set forth in *Knickerbocker Russell Co., Inc. v. Crawford*, 936 A.2d 1145 (Pa. Super. 2007). There, we explained that

> [a] petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record.... An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered.

> In determining whether fatal defects exist on the face of the record for the purpose of striking a judgment, a court may look only at what was in the record when the judgment was entered. We review a trial court's refusal to strike a judgment for an abuse of discretion or an error of law.

*Id*., at 1146-1147 (citations omitted).

Similarly, Morrison's first and third issues, challenging the order denying his petition to open the confessed judgment, are reviewed for an abuse of discretion. *See PNC Bank, Nat. Ass'n v. Bluestream Technology, Inc.*, 14 A.3d 831, 835 (Pa. Super. 2010). A petition to open judgment is an appeal to the equitable powers of the court. *See PNC Bank*

- 4 -

*v. Kerr*, 802 A.2d 634, 638 (Pa. Super.2002). As such, it is committed to the sound discretion of the hearing court and will not be disturbed absent a manifest abuse of discretion. ***See Bluestream Technology***, ***Inc***., 14 A.3d at 835. A "petition to open rests within the discretion of the trial court, and may be granted if the petitioner (1) acts promptly, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury." ***Id***., at 836 (citation omitted).

In his first issue on appeal, Morrison argues that the trial court erred in refusing to open the judgment, as Morrison asserts that Note Acquisition was merely a façade that should be disregarded. Morrison contends that as a result, Note Acquisition's purchase of the New Note should be treated as Wei satisfying the new note, leaving Wei only with the right to pursue a common law contribution action against Morrison.

While there is a dearth of recent, relevant, Pennsylvania case law on the issue, we agree with Morrison that had Wei purchased the note from TriState in his personal capacity, the obligations and rights under the note would have been discharged. ***See*** 13 Pa.C.S.A. § 3602(a) ("[A]n instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the instrument."); ***see also Hess v. Gower***, 11 A.2d 787, 789-90 (Pa. Super. 1940) (opining that under the since repealed Uniform Negotiable Instruments Act a maker who acquired a note from his creditor discharged the note). Thus, under

this scenario, Wei would not have the right to enforce the confessed judgment provisions of the New Note, but would only have right of contribution against Morrison. **See id**., at 790.

However, Wei apparently understood this consequence as well, since he did not purchase the New Note from TriState in his personal capacity. Rather, Wei formed an LLC, Note Acquisition, which purchased the New Note from TriState in its own, separate capacity. Morrison concedes that, at first impression, Pennsylvania law treats Note Acquisition as a separate and distinct legal entity from Wei. **See** Appellant's Brief, at 16. Morrison argues, however, that this facial treatment can be "disregarded whenever justice or public policy demand." **Id**. (quoting **Ashley v. Ashley**, 393 A.2d 637, 641 (Pa. 1978)). Obviously, Morrison believes, and argues forcefully, that justice demands that Note Acquisition's separate legal identity should be disregarded in this case.

Morrison argues that Wei utilized Note Acquisition to subvert legal processes to provide Wei with greater rights than those to which he was entitled. Specifically, Morrison contends that Wei's use of the right to a confessed judgment under the New Note constitutes a perversion of justice that the court system should not countenance. In support, Morrison draws our attention to **Good v. Holstein**, 787 A.2d 426 (Pa. Super. 2001).

In **Good**, the defendants, the Holsteins, had taken out a first mortgage on their property, and personally guaranteed the first mortgage. The

Holsteins subsequently took out a second mortgage from Good Transport Ltd., the plaintiff, Ethan Good's, corporation, but they did not personally guarantee the second mortgage. The Holsteins ultimately defaulted under both mortgages.

Good Transport obtained a judgment on the second mortgage. Ethan Good then purchased, in his personal capacity, the first mortgage from the original mortgagee, Eggo. Ethan Good then filed a confessed judgment against the defendants, in their personal capacity, on the surety agreement for the first mortgage. Thereafter, Good Transport purchased the property for approximately $2,000 at a sheriff's sale on the judgment for the second mortgage, and subsequently transferred title to Ethan Good. After determining a fair market value for the property, the court found a deficiency of approximately $325,000 on the second mortgage.

Ethan Good then proceeded to trial against the Holsteins on their suretyship of the first mortgage. For reasons unclear from the opinion, the trial court calculated the Holsteins' liability under the first mortgage by subtracting the deficiency on the second mortgage from the fair market value on the property, and applied the result as a credit against the outstanding balance of the first mortgage. Thus, the trial court found the Holsteins personally liable to the Ethan Good in the amount of approximately $315,000. The Holsteins appealed from this judgment.

On appeal, this Court reversed the trial court's decision, first by determining that the separate corporate identity of Good Transport should be disregarded under the facts of the case.[1] As a result, the panel concluded that Ethan Good was, in fact, the holder of both mortgages at the time he obtained a deficiency judgment on the second mortgage. Therefore,

> [o]nce [Ethan Good] purchased the property at the sheriff's sale, he had a duty to [the Holsteins], as sureties on the senior lien, to satisfy the senior mortgage first. However, by suing on the junior lien first, [Ethan Good] impaired the sureties['] collateral, *exposing them to greater liability than they could have reasonably anticipated*. [Ethan Good] cannot subordinate the senior lien by virtue of his possession of both liens. Thus, the surety on the first mortgage was satisfied when the property was attributed a fair market value sufficient to cover the entire amount of the surety agreement. The fact that [Ethan Good] proceeded against the junior lien before he obtained the senior lien *does not absolve his duty to the surety* of the senior lien to discharge the liens in order of their priority.

787 A.2d at 432 (citations omitted) (emphasis supplied).

Thus, the panel based their decision on two circumstances. First, that the Holsteins, in signing the surety agreement, could not have reasonably anticipated that they would not have the benefit of the fair market value of the property as a credit to reduce their liability under the suretyship. Second, the panel found that Ethan Good, as holder of the first mortgage,

---

[1] The opinion does not explicitly address the nature of the suretyship. Thus, it is unclear from the opinion whether this was necessary, considering Eggo's and Good Transport's failure to preserve their security interest for the benefit of the Holsteins as sureties. **See**, **e.g.**, **First National Consumer Discount Company v. McCrossan**, 486 A.2d 396, 399-400 (Pa. Super. 1984).

had violated a duty he owed to Holsteins as sureties on the first mortgage. Based upon these two circumstances, the panel reversed the judgment.

Here, Morrison argues that Wei has similarly perverted the legal process by using Note Acquisition to preserve the remedy of confessed judgment where it should have been extinguished. Morrison contends that he could not have reasonably foreseen that Wei would be able to exercise the right to confessed judgment, and therefore **Good** provides that the courts should ignore the separate corporate identity of Note Acquisition.

While Morrison has provided thorough advocacy and argument on this theory, we disagree. First, it was not that the Holsteins could not reasonably foresee who would sue them under the suretyship, but rather that they could not foresee the amount of the financial exposure they faced given Ethan Good's legal maneuvering. This is a significant distinction. It is clear that the note and mortgage in **Good** were assignable, just as they are in the present case. Thus, in both cases, the debtors were aware that it could be an assignee that sought to enforce the note. What is different is that Morrison cannot cogently argue that his financial exposure has been increased through Wei's maneuverings.

Morrison does argue that his exposure was increased from half of the balance to the entirety. However, this is not true. He was always on notice that he could be held accountable for the entirety of the debt, as he and Wei were jointly and severally liable on the note. Furthermore, Morrison retained

a right to contribution from Wei under the UCC or the common law. *See* 13 Pa.C.S.A. § 3116; *Goldberg v. Altman*, 154 A.2d 279, 282 (Pa. Super. 1959).

Second, as noted above, the *Good* court also premised its decision on the existence of a duty from Ethan Good to the Holsteins by dint of their status of sureties on a mortgage he held. In the present matter, Wei holds no such duty to Morrison. Thus, Morrison has failed to establish that Wei accomplished anything improper through the use of Note Acquisition, and Morrison's first argument on appeal merits no relief.

In his second argument on appeal, Morrison asserts that the confessed judgment should be stricken, as the confession of judgment clause was not explicitly restated in the first allonge, which modified the New Note. The first allonge[2] to the New Note modified the payment terms and maturity date contained the New Note. Initially, section 2(a) of the New Note provided that Wei and Morrison would make 60 monthly payments in the amount of approximately $19,000 on their arrears, with a final maturity date of May

_____

[2] We use the nomenclature used by the parties when they executed the document. However, the document does not appear to qualify as an allonge under a strict definition of the term. An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *JP Morgan Chase Bank, NA v. Murray*, 63 A.3d 1258, 1259 n.2 (Pa. Super. 2013) (citation omitted). Both parties to this appeal concede that the first allonge effected a modification of the New Note. *See* Appellant's Brief, at 24; Appellee's Brief, at 46.

31, 2014.  In contrast, the first allonge modified section 2(a) to provide for 58 consecutive monthly payments of approximately $17,000, with a final maturity date of May 31, 2014.

Due to the drastic loss of due process rights inherent in confessed judgments, Pennsylvania courts require that such clauses be explicit and be strictly construed.  *See*, *e.g.*, *Ferrick v. Bianchini*, 69 A.3d 642, 651 (Pa. Super. 2013).  Furthermore, we have long held that the law will not presume an intent to preserve a confessed judgment clause when the parties modify a contract.  *See Egyptian Sands Real Estate, Inc. v. Polony*, 294 A.2d 799, 803 (Pa. Super. 1972).

> [A] warrant of attorney to confess judgment must be self-sustaining; the warrant must be in writing and signed by the person to be bound by it; and the requisite signature must bear a direct relation to the warrant and may not be implied extrinsically nor imputed from assignment of the instrument containing the warrant.

*Ferrick*, 69 A.3d at 651.   The mere general reference to the effect of preserving all other provisions in an agreement, contained in a modification to the agreement, is not sufficient to preserve the confessed judgment clause pursuant to the modified agreement.  *See Scott v. 1523 Walnut Corp.*, 447 A.2d 951, 956-957 (Pa. Super. 1982).

Here, the first allonge contains only a mere general reference to the other provisions of the new note:  "All other terms of the Note remain the same except those affected by the decrease in the Principal amount."  Thus,

it would appear, as Morrison urges, that the confessed judgment clause was not preserved.

However, "[a]n immaterial change in the wording of a judgment note does not prevent the entry of judgment by confession." *Duque v. D'Angelis*, 568 A.2d 231, 232 (Pa. Super. 1990) (citation omitted). In *Duque*, the creditor struck the signature of one co-debtor from the note after the defendant, D'Angelis, had signed it. After the creditor entered a confessed judgment on the note, D'Angelis petitioned to open the judgment, on the grounds that the modification defeated the entry of confessed judgment. The trial court denied the petition, and this Court affirmed. The panel noted that even under the note as it existed when D'Angelis signed it, D'Angelis was jointly and severally liable to the creditor. As such, the creditor was entitled to hold D'Angelis liable for the entire amount of the debt with or without the other co-debtor's signature. "Consequently, the deletion of Allison's name does not affect appellant's liability to appellee or the amount of judgment." *Id*., at 233.

In the present matter, as shown above, the first allonge reflected an acknowledgment that Morrison's and Wei's first two payments on arrearages were significantly more than what was required under the New Note. Thus, the remaining 58 monthly payments were reduced in amount, while the maturity date stayed the same. We conclude that this modification was merely an explicit acknowledgment of the decreased balance, and did not

affect Morrison's liability under the note or the amount of judgment. Thus, we conclude that Morrison's second issue on appeal merits no relief.

In his third and final issue on appeal, Morrison argues that the assignment of the New Note to Note Acquisition materially altered his obligations under the New Note, and therefore was invalid. As discussed above however, Morrison was always jointly and severally liable under the New Note. Thus, it was always within reason to foresee that he might be called upon to satisfy the entirety of the obligation under the New Note, and be forced to pursue a contribution action against Wei. The assignment of the New Note to Note Acquisition did not modify Morrison's potential exposure under the New Note. Morrison still had the right to pursue a contribution action against Wei once Note Acquisition sought to hold Morrison liable for the entirety of the debt. Therefore, Morrison's final argument merits no relief.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/6/2015